United States District Court
for the
Southern District of Florida

| Everth Issac Angulo, Plaintiff, | ) |
| :--- | :--- |
|  | ) |
| v. | ) |
|  | ) Civil Action No. 19-21352-Civ-Scola |
|  | ) |
| Il Gabiano Miami, LLC and others, | ) |
| Defendants. | ) |

### Order on Parties' Motions for Summary Judgment

This matter is before the Court on Plaintiff's motion for partial summary judgment (ECF No. 38) and the Defendants' motion for summary judgment. (ECF No. 41.) Both motions are fully briefed and ripe for the Court's review. Upon review of the record, the parties' briefs, and the relevant legal authorities, the Court **denies** the Plaintiff's motion for summary judgment (**ECF No. 38**) and **grants in part and denies in part** the Defendant's motion for summary judgment. (**ECF No. 41**.)

### I. Background

Plaintiff Everth Issac Angulo filed a complaint against his former employer, Il Gabbiano, and the three owners of the restaurant, Gino Masci, Fernando Masci, and Luigi Tullio, for unpaid overtime wages under the FLSA. (ECF No. 1.) On July 29, 2019, Il Gabbiano filed a four-count counterclaim against Angulo for conversion, fraud in the inducement, unjust enrichment, and civil theft. (ECF No. 30.) The counterclaim alleges that Defendants overpaid Angulo in the amount of $39,446.71.

Based on the facts in the record, the Plaintiff worked as an appetizer and salad preparer from 2007 to 2019. (Defendants' Statement of Facts ("Def.'s SOF") at ¶ 1.) According to the Defendants, the going rate for a salad preparer in Miami is $9 to $13 per hour. (*Id.* at ¶ 3.) Il Gabbiano paid Angulo $1100 a week if he worked six days a week, which was approximately $200 more than he would make if he worked 60 hours at $13 per hour with $19.50 per overtime hour. (*Id.* at ¶¶ 3, 12.) The Defendants paid Angulo more than the going market rate so that Angulo would remain loyal to the restaurant and excel in his work. (*Id.*) If he worked fewer than six days, his pay would be reduced by the number of days he missed. (*Id.*) Carmen Polluck, the Controller of Il Gabbiano, testified that "instead of paying him $13 an hour plus overtime, we would pay him a set amount so that he can come and go." (ECF No. 39-7 at 24:19-23.)

Chef Sanango was Angulo's direct supervisor and responsible for hiring him. (*Id.* at ¶ 4.) Carmen Polluck is responsible for running the office, making

the restaurant's budget, managing the employee's benefits, processing payroll, and reconciling time records. (*Id.* at ¶5.) At least one of the owners is always present at the restaurant. (Plaintiff's Statement of Facts ("Pl.'s SOF") at ¶ 2, ECF No. 39.)

## II. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses." *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1316 (S.D. Fla. 2001) (Jordan, J.).

In reviewing a motion for summary judgment, the Court must "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Feliciano v. Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013) (quoting *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1143 (11th Cir. 2007)). The moving party bears the burden of proof to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. However, "the mere existence of a scintilla of evidence in support" of the non-moving party's position is insufficient to deny summary judgment. *Santelices*, 147 F. Supp. 2d at 1317 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## III. Analysis

### I. The Plaintiff's Motion for Partial Summary Judgment

The Plaintiff's motion for partial summary judgment asks the Court to find that (A) the Plaintiff was an employee of the individual Defendants and (B) that liability has been established. (ECF No. 38 at 2.)

#### A. Defendants as Individual Employers

"A plaintiff may seek to sue an individual employer or multiple employers in a FLSA case, as the statute contemplates that there may be several simultaneous employers who are responsible for compliance with the FLSA." *Ceant v. Aventura Limousine & Transp. Service, Inc.*, 874 F. Supp. 2d 1373, 1380 (S.D. Fla. 2012) (Scola, J.). The statutory definition of "employer" is quite broad and "encompasses both the employer for whom the employee directly works as well as any person acting directly or indirectly in the interests of an employer in relation to an employee." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (citing 29 U.S.C. § 203(d)). An individual "must

either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee" in order to qualify as an FLSA employer. *Gonzalez v. Metropolitan Delivery Corp.*, 2012 WL 1442668, *8 (S.D. Fla. Apr. 26, 2012) (Scola, J.) (citing *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008)). "A party need not have exclusive control of a corporation's everyday workings, so long as he has operational control of significant aspects of the corporation's day to day functions." *Id.* Angulo seeks to hold individual defendants Fernando Masci, Luigi Tullio, and Gino Masci jointly and severally liable along with Il Gabbiano for his unpaid overtime.

The Mascis and Tullio own Il Gabbiano. According to the Plaintiff, they were involved in the day to day operations of Il Gabbiano. (ECF No 38 at 5.) Each of the owners has the authority to sign paychecks and checks for the restaurant. (*Id.*) Each owner spends four months of the year at the restaurant. (ECF No. 39-2 at 87:17-21.) Fernando Masci testified that he is at the restaurant day-to-day "supervis[ing] what's going on." (ECF No. 39-2 at 52:14-17.) However, when asked if he set the employee's schedules, he said that "the office set[s] the schedule." (*Id.* at 53:23-4.) Masci also testified that he and the chef met on Saturdays to discuss the specials and he directs the menu because "all the recipes have to come from the owner." (*Id.* at 84:9-18.) If a customer complains about food, Masci tries to address the problem. "I try to correct the things by myself, you know. Let's say somebody complains too salty or it has no flavor, the day after, you know, I sit down two minutes with the chef. I say, "Look, temperatures, adjust this..." (*Id.* at 83:10-16.)

Gino Masci testified that he does mostly "public relations" at the restaurant and "the wines because it's a hobby of mine." (ECF No. 39-4 at 5:23-6:2.) When asked what he does when he is at the restaurant, Masci explained that, "Basically, I check the cooler where all my wines they are displayed and go around talking to people. That's my job." (*Id.* at 8:1-3.)

The Plaintiff asserts three facts about Luigi Tullio: the Plaintiff would "fix special things" for Tullio in the kitchen when he wanted something to eat; Tuillio is in contact with the wine vendors; and Carmen Polluck (the Controller) reports to Tullio. (ECF No. 38 at 8.)

Based on the record, the Court finds that Gino Masci and Luigi Tullio did not exercise the level of operational control that is required for individual employer liability under the FLSA. *See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1161 (11th Cir. 2008) (affirming judgment as a matter of law on issue of employer's individual liability where owner was not involved in the day-to-day operations of the facility). They spent limited time at the restaurant and were not involved with the employees, scheduling, or operations. These responsibilities were delegated to Carmen Polluck, the Controller, or

Marco, the Manager. (*See* ECF No. 39-4 at 8:4-7.) Because the Defendants also moved for summary judgment on this issue, ECF No. 41 at 8 n.2, the Court denies the Plaintiff's motion and grants Gino and Luigi's motions for summary judgment on this issue.

The Court, however, finds that there is a disputed issue of fact as to whether Fernando Masci was involved in the day-to-day operations of the restaurant. Although Fernando only spends four months of the year at the restaurant, his testimony indicates that he meets regularly with the chef, attends to customer complaints, and generally oversees the restaurant when he is present. The Court finds that there are sufficient facts under which a reasonable juror could conclude that Fernando was involved in the day-to-day operations of the restaurant. *See Solano v. A Navas Party Prod.,* 728 F. Supp. 2d 1334, 1342 (S.D. Fla. 2010) (Altonaga, J.) (denying summary judgment on individual employer liability where co-owner and corporate officer of the business was a signatory on the business accounts and would instruct employees and answer questions). Accordingly, the Court denies the Plaintiff's motion and the Defendant's motion as to Fernando Masci.

### B. Liability

Angulo also requests that the Court find that the Defendants are jointly and severally liable for unpaid overtime wages and asserts that the jury only needs to determine the amount of damages. (ECF No. 8 at 8.) The Court will not make a liability finding at this juncture. There are a number of affirmative defenses that remain unresolved, including that the Defendants acted in good faith. (ECF No. 10 at ¶ 21.) Moreover, the Defendants dispute that Angulo is owed any overtime compensation at all and have counterclaimed for overpayment. (ECF No. 30.)

### II. The Defendants' Motion for Summary Judgment

The Defendants argue that they are entitled to summary judgment on Angulo's FLSA claim because Angulo has not met his burden of showing that he worked in excess of forty hours in any one workweek and was not properly compensated for his overtime work. (ECF No. 41 at 6.) The Defendants' argument relies on one unreported case from the District of Wyoming. (*Id.* at 6-7.) Upon careful review, the Court disagrees with the Defendant.

As an initial matter, neither party has properly addressed how overtime compensation should be calculated in this case. The Defendants' position is that they paid Angulo $1100 per week, which was roughly equivalent to $13 per hour, the "going rate" for salad preparers, plus overtime at $19.50, and an additional $200 to keep him happy and loyal to the company when he worked six days a

week.[1] (ECF No. 66 at ¶ 3.) If Angulo worked fewer than six days, his compensation "would be reduced by the number of days that he did not work during that particular pay period." (ECF No. 41 at 3.) His hours fluctuated from week to week. A cursory review of Angulo's earnings records and time sheets confirms that he was paid $1100 when he worked six days and $917 when he worked five days. (ECF Nos. 40-6, 40-10.) How these numbers were calculated, on an hourly basis, however, is unclear. For example, on the week of May 16, 2016 to May 22, 2016, Angulo worked for 67.91 hours over six days. (ECF No. 40-6 at 3.) He was paid $1100 for this week. (ECF No. 40-10 at 3.) Based on Il Gabbiano's explanation of how it compensated Angulo, Angulo should have been paid $13 per hour for the first 40 hours and $19.50 per hour for the 27.91 overtime hours he worked. This would total $1,064.25. Angulo would also be entitled to $200 for working six days that week, for a total of $1,264.25. He was paid $1,100 that week. The week of May 9, 2016 to May 15, 2016, Angulo worked five days and was paid $916.67. (ECF Nos. 40-6 at 2, 40-10 at 2.) This is consistent with Il Gabbiano's representations that it reduced Angulo's pay if he worked fewer than six days. However, how the Defendants arrived at this number based on an hourly and overtime compensation scheme is unclear. Based on the $13 per hour and $19.50 overtime hour scheme, Angulo should have been paid $629.78 that week, not $916.67.

In its response to the Defendants' motion, the Plaintiff argues that his time records clearly show overtime hours and his compensation agreement was "confusing." (ECF No. 62 at 3, 7.) Angulo's response also cites testimony from Il Gabbiano's corporate representative stating that Angulo was a salaried employee. (*Id.* at 4.) Angulo's time sheets do indeed indicate "regular" hours worked and "overtime" hours. (ECF No. 40-6.) Angulo, however, does not offer an alternative means of calculating his compensation.

The Court notes that under 29 C.F.R. § 778.114, a salaried employee may receive overtime payment based on the "fluctuating workweek" method of overtime payment.

> The fluctuating workweek method of payment allows an
> employee whose hours fluctuate from week to week to
> be compensated at a fixed amount per week as straight-

---

[1] The Defendants' position is inconsistent throughout its briefing. In its motion for summary judgment, the Defendants state that they paid Angulo a flat rate of $1100 per week if he worked six days a week. (ECF No. 41 at 2.) In their reply, the Defendants state that Angulo was paid $13 per hour for the first 40 hours and $19.50 per hour for any overtime hours, up to 20 hours of overtime, plus $200 if he worked six days a week. (ECF No. 66 at ¶ 3.) This equals approximately $1100 for a six-day week. (*Id.*)

> time pay irrespective of the number—few or many—of hours worked. Payment for overtime hours under this method is at one-half time regular-rate instead of the standard one and one-half time rate because the straight-time rate already includes compensation for all hours worked. The regular-rate of hourly compensation will vary from week to week depending on the number of actual hours worked in any given workweek; it is calculated by dividing the number of hours worked into the amount of the straight-time salary.

*Davis v. Friendly Exp., Inc.*, No. 02-14111, 2003 WL 21488682, at *1 (11th Cir. Feb. 6, 2003). Neither party discusses the applicability of the fluctuating workweek method in this case.

In sum, there appear to be various issues of fact regarding Angulo's compensation scheme, whether he was salaried or hourly, and how his pay was calculated. Therefore, the Defendants not entitled to summary judgment on Angulo's FLSA claim.[2]

Il Gabbiano also moves for summary judgment on its counterclaim for conversion, fraud in the inducement, unjust enrichment, and civil theft. (ECF No. 41 at 8-13.) The Defendant's counterclaim is based on Il Gabbiano's assertions that it overpaid the Plaintiff $39,446.71 during his time as a salad preparer. (ECF No. 30 at ¶ 19.) The Defendant's counterclaim argues that Il Gabbiano agreed to pay Angulo $1100 per week *rather than* the "going rate of $13 per hour, and $19.50 per hour for each hour of overtime during the same pay period." (ECF No. 30 at ¶ 19.) According to Il Gabbiano, $1100 a week was more than Angulo would have received had he been paid under an FLSA-compliant hourly arrangement, and therefore they are entitled to the money they "overpaid" Angulo. (*Id* at ¶¶ 18-19.) Il Gabbiano is essentially conceding that Angulo was *not* an hourly employee. (*Id.* at ¶ 18 ("Had Counter-Defendant voiced any concerns about his compensation arrangement, Il Gabbiano would have at least **offered him the option. . . [of] switching to an hourly arrangemen**t . . .") (emphasis added)). As discussed above, 29 C.F.R. § 778.114 provides for the fluctuating workweek method of calculating overtime pay for salaried employees. As neither party has discussed the applicability of this method to this case or

---

[2] The Defendants' motion includes a footnote arguing that the individual Defendants are also entitled to summary judgment because the record clearly establishes that they are not "employers" under the FLSA. (ECF No. 41 at 8 n.2.) As the Plaintiff moved for partial summary judgment on this issue, the Court addressed the Defendants' argument with the Plaintiffs' motion.

explained how exactly Angulo's pay was calculated, the Court cannot resolve these claims.

In sum, the Court finds that the Defendant's counterclaim also turns on the disputed issue of Angulo's compensation scheme and factual determinations by the jury as to what exactly was paid and/or owed. The Defendant's motion for summary judgment on its counterclaim is denied.

### IV. Conclusion

Based on the foregoing, the Court **denies** the Plaintiff's motion for partial summary judgment (**ECF No. 38**) and **grants in part and denies in part** the Defendants' motion for summary judgment. (**ECF No. 41**.) The Defendants' motion is granted only as to Gino Masci and Luigi Tullio's liability. The Defendants' motion is denied in all other respects.

**Done and ordered** at Miami, Florida, on December 9, 2019.

_____
Robert N. Scola, Jr.
United States District Judge